■ J. TRACY BUSONE, Individually and as Parent and Guardian of TIFFANY BUSONE, an Infant, Respondent, v BELLEVUE

MATERNITY HOSPITAL, Appellant. [702 NYS2d 117] —Carpinello, J. Appeals (1) from an order of the Supreme Court (Ferradino, J.), entered May 1, 1998 in Saratoga County, which, *inter alia,* granted plaintiff's motion to vacate a default judgment against her, and (2) from an amended order of said court, entered January 22, 1999 in Saratoga County, which denied defendant's motion for summary judgment dismissing the complaint.

In this medical malpractice action commenced in February 1987, plaintiff seeks compensation for injuries sustained by her infant daughter at the time of her birth on July 15, 1984. In 1994, a $575,000 settlement was reached with the attending obstetrician. Plaintiff now claims that her daughter suffers from cerebral palsy as a result of severe neonatal asphyxia due to meconium aspiration caused by the lack of proper care and treatment rendered by defendant's staff.

Specifically, plaintiff contends that, given the presence of thick meconium in her amniotic fluid at the onset of labor, a neonatal resuscitation team should have been present in the delivery room prior to the actual delivery. According to plaintiff's deposition testimony, there was no "crash cart"[1] in the room prior to delivery and special care nursery "nurses"[2] were not summoned until after the baby was born. When they did arrive, according to plaintiff, they were unable to intubate the baby, allegedly because they lacked a laryngoscope, endotracial tubes and proper training, and were unable to establish a sufficient oxygen supply to the infant because of malfunctioning equipment. Plaintiff further asserts that the neonatologist, who also was not summoned until after delivery, did not arrive for 10 to 15 minutes and then took 20 minutes to establish a clear airway for the infant.

In February 1996, defendant moved for summary judgment and plaintiff's counsel moved to be relieved citing his opinion that no viable cause of action existed against defendant. By letter dated February 27, 1996, plaintiff personally responded to her counsel's motion and opposed the application. In this letter, she indicated that she was shocked by her attorney's opinion that no viable claim existed against defendant and expressed a desire "to get experts in order and workout [*sic*]

---

1. While certain witnesses testified that a crash cart was present in the delivery room prior to delivery, the charge nurse tending to plaintiff during delivery confirmed plaintiff's version that a crash cart was not brought into the room until *after* delivery.

2. Although plaintiff testified about the presence of two special care nursery "nurses", in actuality one of these two individuals was a nurse and the other was a physician's assistant.

the issue of representation with [her current attorney] or others". By order dated March 18, 1996, Supreme Court, *inter alia,* granted counsel's motion to be relieved, authorized plaintiff to obtain new counsel and adjourned defendant's motion for summary judgment until July 12, 1996, ordering any opposition papers to be filed by July 5, 1996. Thereafter, by letter dated March 21, 1996, plaintiff reiterated her opposition to counsel being relieved, pleaded with the court not to jeopardize her daughter's well-being by leaving her unprotected and unrepresented and questioned her ability to retain another attorney in the time allowed.

When no opposition papers were filed, defendant was granted summary judgment by default. The order dismissing the complaint, entered August 27, 1996, was served on plaintiff approximately three weeks later. In September 1997 and November 1997, respectively, plaintiff, through newly retained counsel, moved to extend the time period within which to move for CPLR 5015 relief and to vacate the prior default judgment. In support of the motions, plaintiff submitted, *inter alia,* the affidavit of Jose Foradada, a physician specializing in pediatric neurology and learning disabilities, who averred that defendant deviated from acceptable standards of care and treatment causing injury to the infant. Foradada claimed that defendant's staff lacked appropriate skill and training to handle the infant's asphyxia, that its labor and delivery nurses failed to appropriately monitor and respond to plaintiff's medical situation and failed to timely identify the need for a resuscitation team, that the special care nursery staff and the neonatologist failed to timely respond to the infant's injuries and that there was an absence of proper equipment in the delivery room.

By order entered May 1, 1998, Supreme Court, finding both a reasonable excuse for delay and a meritorious defense, granted both motions. By amended order entered January 22, 1999, Supreme Court further denied defendant's motion for summary judgment. Defendant appeals from both orders.

Noting that "the quantum of proof needed to prevail on a CPLR 5015 (a) (1) motion is not as great as that required to successfully oppose a motion for summary judgment" (*Winney v County of Saratoga,* 252 AD2d 882, 884; *see, Goodsill v Middleburgh Little League,* 213 AD2d 843, 844) and that the decision to vacate a default judgment rests within the sound discretion of the court (*see, Fishman v Beach,* 246 AD2d 779, 780), we affirm. A motion to vacate a default judgment may be granted where there is a reasonable excuse for the default and a meritorious cause of action or defense (*see,* CPLR 5015 [a]

[1]; *Winney v County of Saratoga, supra,* at 884), both of which are present in this case.

Plaintiff's excuse for her failure to timely respond to defendant's summary judgment motion was her inability to expeditiously retain new counsel after more than nine years with the same attorney in this complex medical malpractice action. Significantly, the lapse was not willful (*see, e.g., Northeastern Harness Horsemen's Assn. v Saratoga Harness Racing,* 216 AD2d 746, 747; *Tiger v Town of Bolton,* 150 AD2d 889, 890-891). Plaintiff, who lived out of State, recited that she made repeated attempts to retain new counsel and faced genuine difficulties, most notably the lack of funds to retain a medical expert to review the case. Further, plaintiff demonstrated a meritorious defense to the motion for summary judgment. Assuming, without deciding, that defendant made a prima facie showing of its entitlement to summary judgment, Foradada's averments and plaintiff's deposition testimony raised triable issues of fact.

Mercure, J. P., Crew III, Peters and Graffeo, JJ., concur. Ordered that the order and amended order are affirmed, with costs.